STUART D. PERLMAN, Plaintiff-Appellant and Respondent-Appellee and Cross-Appellant, v. TIME, INCORPORATED, Defendant-Appellee and Petitioner-Appellant and Cross-Appellee.

First District (5th Division)   Nos. 83—1078, 83—2597 cons.

Opinion filed May 17, 1985.

Aram A. Hartunian, Joel M. Hellman, and James Bradtke, all of Hartunian, Futterman & Howard, of Chicago, for appellant.

Gary M. Elden, Philip C. Stahl, and Steven A. Weiss, all of Reuben & Proctor, of Chicago, for appellee.

PRESIDING JUSTICE MEJDA delivered the opinion of the court:

Plaintiff, Stuart Perlman, brought this action for damages and equitable relief on behalf of himself and others similarly situated whose Life magazine subscriptions were unexpired when defendant, Time, Inc. (Time), terminated publication of Life in 1972. We previously reviewed this case on plaintiff's appeal from entry of summary judgment in favor of Time. We reversed and remanded, holding that summary judgment was a particularly inappropriate and incorrect remedy. (*Perlman v. Time, Inc.* (1978), 64 Ill. App. 3d 190, 380 N.E.2d 1040.) On this appeal, plaintiff contends that the trial court erred in: (1) refusing to reopen proofs for submission of plaintiff's request to admit facts and Time's answer to the request after plaintiff rested; (2) granting Time's motion for a directed finding at the close of plaintiff's case; (3) refusing to include nonresidents in the class without individual notice; (4) decertifying the class of Illinois residents; and (5) making objectionable comments concerning plaintiff's counsel. Time cross-appeals, contending that the court erred in denying its motion for expenses and attorney fees. We affirm.

The facts are as follows. Plaintiff renewed his subscription to Life magazine in September 1972, contracting for 78 issues for which he paid $11.95 in advance. When the final issue of Life was published on December 29, 1972, plaintiff had received 18 of the 78 issues of Life for which he had contracted and paid. Time sent plaintiff a solicitation letter offering him a choice of a cash refund or a substitute subscription to any one of 29 magazines in place of the unfulfilled portion of his Life subscription. Time's letter stated in part that, "[a]ll choices, of course, offer you full value for the remaining portion of your Life subscription." Plaintiff chose to receive Time magazine. He received

43 issues of Time in substitution for the 60 issues of Life.

Plaintiff's Time subscription expired in June 1974. In November 1974, plaintiff wrote Time that he should have about eight months remaining on his subscription. Time responded that the 43 issues of Time represented full credit for the unfulfilled portion of his Life subscription. When plaintiff again complained that he had not received full credit, Time informed him that the number of Time issues due was determined by a "basic-to-basic" conversion formula advocated by the Audit Bureau of Circulations (ABC). The ABC periodically certifies the paid circulation of magazines to determine appropriate advertising rates. The "basic" rate is the highest price at which subscriptions are sold. The basic annual subscription rate for Life was $10 and for Time was $14. By dividing the basic rate for Life by the basic rate for Time, it was determined that plaintiff was due 43 issues of Time.

In 1975, plaintiff brought this action against Time on his own behalf and on behalf of all others similarly situated, claiming that he had not received the "full value" promised for his Life subscription. The class consisted of an estimated 800,000 persons. Plaintiff alleged common law fraud, unjust enrichment, a violation of the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (Ill. Rev. Stat. 1971, ch. 121½, par. 262), and breach of contract.

On June 19, 1981, the trial court found that all of the requirements of the class action statute (Ill. Rev. Stat. 1979, ch. 110, par. 57.2) were satisfied. The court certified a class of former Life subscribers who had received Time magazine in substitution for their unexpired Life magazine subscriptions. Because the court believed that due process required individual notice to all class members and because of the plaintiff's unwillingness to undertake sending individual notice to all class members, the court declined to certify a nationwide class. A class comprised of Illinois residents was certified.

On April 26, 1983, the first day of trial, the trial court granted Time's motion to decertify the class of Illinois residents. Plaintiff's motion to expand the class was denied. The primary reason given for the class decertification was plaintiff's failure to notify the class members. The court also stated that the suit was not an appropriate method for the fair and efficient adjudication of the controversy.

At trial, the case proceeded on the individual claims of the plaintiff and not as a class action. Plaintiff only pursued his claims based on breach of contract and the Consumer Fraud Act. Kelso Sutton, vice-president and corporate circulation director for Time in 1972, was called as an adverse witness. He testified that during that year Life sold for 50 cents a copy at newsstands. Time sold for about 60

cents at newsstands. As circulation director, he was responsible for filing ABC statements. At the end of 1972, the ABC statement reflected that Life's basic rate was $10 a year and that Time's basic rate was $14 a year. Due to poor market conditions, Time sold for less than the basic rate during the last half of 1972. Most of these subscriptions for less than the basic rate were special introductory offers rather than renewal subscriptions. Sutton first heard that Time was considering terminating publication of Life in the second quarter of 1972. The decision to cease publication was not made until November of that year. Prior to issuing the solicitation letter to Life subscribers, Time consulted with the Federal Trade Commission (FTC). The FTC insisted that a full range of alternative magazines be offered to Life subscribers. With so many alternative magazines being offered, each with a different copy rate, Time decided that it was impossible to use an issue-for-issue conversion formula. Under these circumstances, Time used the basic-to-basic conversion formula which is the standard practice in the industry. The idea of informing subscribers of the number of issues they would receive using the basic-to-basic formula never occurred to anyone at Time.

Bruce Barnett, circulation director of Life magazine in 1972, called as an adverse witness, testified that the average copy rate for Life subscriptions during the last six months of 1972 was approximately 16 cents for new subscriptions and approximately 15 cents for renewal subscriptions. Life sold for 50 cents at newsstands in 1972. Referring to the ABC statement for the six-month period ending in December 1972, Barnett stated that Time's price at newsstands was 50 cents.

Dan Erin, a computer expert, also called as an adverse witness, testified that the number of issues of the alternative magazines each Life subscriber would receive could easily have been programmed into the computer and included in the solicitation letter. Indicating how many issues were remaining could have been done at a small additional cost and would have had no impact on the amount of time required to prepare the mailing to subscribers.

After plaintiff rested, he offered into evidence his request to admit facts and Time's answer to that request. Plaintiff's request stated that during the period September 1, 1972, through December 31, 1972, the average subscription price per copy of Life magazine was more than 90% of the average subscription price per copy of Time magazine. Time's answer to plaintiff's request admitted this fact. The trial court sustained Time's objection to the admission of the request and answer into evidence. At the close of plaintiff's case, Time moved

for a directed finding. The motion was granted. Plaintiff appeals.

OPINION

■ We first address the issue of whether the trial court erred in refusing to reopen proofs to admit plaintiff's additional evidence. Plaintiff contends that Time admitted in its answer to plaintiff's request to admit facts that Life was worth more than 90% of Time. Plaintiff maintains that the trial court should have reopened the case for the admission of this evidence which plaintiff offered after resting his case. The reopening of proofs is a matter within the sound discretion of the trial court. (*Harper v. Johnson* (1978), 61 Ill. App. 3d 190, 193, 377 N.E.2d 1288.) Because plaintiff did not provide the court with a reasonable excuse for his failure to submit this evidence during trial, we find that the trial court did not abuse its discretion in refusing to admit this evidence. Compare *Western Transportation Co. v. Republic Molding Corp.* (1982), 104 Ill. App. 3d 1081, 433 N.E.2d 1060 (no reasonable excuse for failure to submit additional evidence during trial), with *Harper v. Johnson* (1978), 61 Ill. App. 3d 190, 377 N.E.2d 1288 (bank's refusal to give original cashier's check to plaintiff was reasonable excuse for failure to produce the original).

■ Even assuming the trial court incorrectly refused to reopen the case, plaintiff waived his right to rely on Time's admission. If a party introduces evidence as to a fact contained in a request to admit, he waives the right to rely on the other party's admission. (*People ex rel. Fahner v. American Buyers Club, Inc.* (1983), 115 Ill. App. 3d 759, 761, 450 N.E.2d 904.) Here, after Time's admission, plaintiff proceeded to present evidence at trial on the relative values of the two magazines, thereby waiving Time's admission.

■ We next consider the issue of whether the trial court erred in granting Time's motion for a directed finding at the close of plaintiff's case. The decision of the trial court granting judgment at the close of plaintiff's case will not be reversed unless it is contrary to the manifest weight of the evidence. (*Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 154, 407 N.E.2d 43.) When ruling on a motion for judgment at the close of plaintiff's case in a nonjury case, the court must determine whether plaintiff has made a *prima facie* case by presenting at least some evidence on every essential element of his cause of action. (81 Ill. 2d 151, 154, 407 N.E.2d 43.) If plaintiff fails to do so, the defendant is entitled to judgment as a matter of law. (81 Ill. 2d 151, 154-55, 407 N.E.2d 43.) When a *prima facie* case has been presented, the court must then weigh the evidence to determine if a *prima facie* case still exists. 81 Ill. 2d 151, 155, 407 N.E.2d 43.

In a breach of contract action, plaintiff must establish an offer and acceptance, the terms of the contract, plaintiff's performance of all contractual conditions required of him and defendant's breach of the terms of the contract. (*Martin-Trigona v. Bloomington Federal Savings & Loan Association* (1981), 101 Ill. App. 3d 943, 946, 428 N.E.2d 1028.) Plaintiff shoulders the burden of proving every material term of the contract. (*Jaffe Commercial Finance Co. v. Harris* (1983), 119 Ill. App. 3d 136, 141, 456 N.E.2d 224.) To establish a violation of the Consumer Fraud Act, plaintiff must show a misrepresentation, concealment or omission of a material fact with intent that others rely on that fact. Ill. Rev. Stat. 1971, ch. 121½, par. 262.

Plaintiff contends that a *prima facie* case was established on both counts and that no issues exist regarding the quality of the evidence. On the question of whether Time gave full value, plaintiff argues that he demonstrated that 43 issues of Time was less than the full value of 60 copies of Life. Plaintiff further maintains that Time admitted that Life sold for more than 90% of the price of Time.

With respect to plaintiff's claim under the Consumer Fraud Act, the trial court found that plaintiff had failed to establish materiality. In order to be considered material, the concealed fact must have been such that had the other party known of it, he would have acted in a different manner. (*Perlman v. Time, Inc.* (1978), 64 Ill. App. 3d 190, 197, 380 N.E.2d 1040.) The record discloses that no evidence was offered on this element of plaintiff's case. Neither was any evidence presented on the question of whether the statement regarding full value was fact or opinion. Because plaintiff failed to present at least some evidence on these essential elements of his cause of action, the trial court correctly ruled that plaintiff had not established a *prima facie* case on this count.

■ Essential to a resolution of the breach of contract count is a determination of whether Time delivered "full value" as promised. As discussed earlier, plaintiff waived his right to rely on Time's admission regarding the relative values of the two magazines. At trial, Sutton testified that many Time and Life subscribers paid less than the basic rate. Both Sutton and Barnett testified that the two magazines sold at newsstands for the same price. The witnesses stated that they believe that the basic-to-basic conversion formula provides full value, that the FTC approves the use of the basic-to-basic formula and that use of this conversion formula is standard practice in the industry. The trial court found that the basic-to-basic formula was a fair and recognized manner in which to make the substitution. The court noted that an issue-for-issue conversion was discussed but rejected because

the FTC insisted on a full range of alternative magazines at various prices and for various issue periods and that there was no showing that this formula had been established solely for the purpose of the Life-to-Time conversion. As *Kokinis* instructs, the court must consider all the evidence, including any favorable to the defendant, and consider the weight and quality of the evidence. (*Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 154, 407 N.E.2d 43.) On this record, we cannot say that, after weighing the evidence, the trial court's finding that a *prima facie* case for breach of contract was not demonstrated was against the manifest weight of evidence. In our opinion, the trial court properly granted Time's motion for a directed finding.

■ Plaintiff next argues that the trial court erred in refusing to include nonresidents in the class without individual notice. He also argues that the trial court erred in decertifying the class of Illinois residents. As we have determined, plaintiff cannot succeed in his individual action for breach of contract or for violation of the Consumer Fraud Act. If the named plaintiff's personal cause fails, the entire class action must fail. (*Perlman v. First National Bank* (1973), 15 Ill. App. 3d 784, 798, 305 N.E.2d 236, *appeal dismissed* (1975), 60 Ill. 2d 529, 331 N.E.2d 65; *De Phillips v. Mortgage Associates, Inc.* (1972), 8 Ill. App. 3d 759, 764, 291 N.E.2d 329; see also *Landesman v. General Motors Corp.* (1978), 72 Ill. 2d 44, 377 N.E.2d 813 (requirement that named representative of class possess a valid claim subsumed in statutory prerequisites for class action); *Brooks v. Midas-International Corp.* (1977), 47 Ill. App. 3d 266, 361 N.E.2d 815 (relief sought on behalf of class unavailable when plaintiff could not succeed in obtaining the same relief in individual action).) Accordingly, we do not address the class issues raised.

■ We note that plaintiff's last contention that the trial court made objectionable comments concerning plaintiff's counsel was first argued in his reply brief. An issue argued for the first time in appellant's reply brief is considered waived. (*Coons v. Wilder* (1981), 93 Ill. App. 3d 127, 132, 416 N.E.2d 785; see 87 Ill. 2d R. 341(g).) For this reason, we do not consider this issue.

■ Time cross-appeals from the trial court's denial of its motion for costs and attorney fees. Section 2—611 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—611) provides in part:

"Allegations and denials, made without reasonable cause and found to be untrue, shall subject the party pleading them to the payment of reasonable expenses, actually incurred by the other party by reason of the untrue pleading, together with a reasonable attorney's fee, to be summarily taxed by the court upon

motion made within 30 days of the judgment or dismissal."

The purpose of section 2—611 is to penalize a litigant who pleads frivolous or false matters or brings suit without basis in law whereby another party shoulders the burden of expending money for an attorney to defend against an untenable suit. (*In re Estate of Palm* (1973), 11 Ill. App. 3d 24, 28, 295 N.E.2d 580.) Because the statute is penal in nature, it may be invoked only in cases falling strictly within its terms. (*Fewer v. Grant* (1982), 111 Ill. App. 3d 747, 750, 444 N.E.2d 628.) In order for the moving party to prevail under section 2—611, he must prove that the allegations were both untrue and made without reasonable cause. (*Third Establishment, Inc. v. 1931 North Park Apartments* (1981), 93 Ill. App. 3d 234, 243, 417 N.E.2d 167.) The burden of proving these two elements rests with the party seeking relief. (*Demos v. Ericson* (1982), 104 Ill. App. 3d 403, 405, 432 N.E.2d 1035.) Allowance of costs and fees is discretionary with the trial court and will not be disturbed on review absent a clear abuse of discretion. *Whirlpool Corp. v. Bank of Naperville* (1981), 97 Ill. App. 3d 139, 144, 421 N.E.2d 1078.

Time contends that the trial court found untrue plaintiff's allegations that Time and Life were of equal value and that Time acted deliberately and intentionally to defraud the plaintiff. Time maintains that these allegations were also made without reasonable cause. We disagree. In our view, plaintiff had reasonable cause to allege that the two magazines were equal in value. The magazines sold for the same price at newsstands during the relevant period and advertisements in these magazines offered subscriptions to Life and Time at minimal price differences. Plaintiff could have construed Time's choice of a conversion formula, unexplained in the solicitation letter, which gave what he considered less than "full value" as an attempt to intentionally defraud him. We find, therefore, that Time has not met its burden of proving that these allegations were made without reasonable cause.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

LORENZ and PINCHAM, JJ., concur.