No. 2--05--1212          Filed: 10-4-07

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| RICHARD A. ANDERSON and SANDRA P. ANDERSON, | ) ) ) | Appeal from the Circuit Court of De Kalb County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 00--CH--16 |
| DONALD J. KOHLER, BETTY J. KOHLER, and ARROWHEAD DEVELOPMENT GROUP, | ) ) ) ) ) | Honorable Douglas R. Engel and Richard J. Larson, |
| Defendants-Appellees. | ) | Judges, Presiding. |

_____

JUSTICE O'MALLEY delivered the opinion of the court:

Plaintiffs, Richard A. Anderson and Sandra P. Anderson, appeal the judgment of the trial court in favor of defendants, Donald J. Kohler, Betty J. Kohler, and Arrowhead Development Group, following a bench trial on plaintiffs' complaint. We agree with plaintiffs that the trial court violated their due process rights when, over their objection, the court relied on a transcript of their case-in-chief from a prior trial on their complaint rather than let them present their case-in-chief anew before the court. We reverse and remand.

The background of this matter is set forth in our prior decision, Anderson v. Kohler, No. 2--02--1274 (2003) (unpublished order under Supreme Court Rule 23), and we recapitulate only what is necessary to explain our decision here. Plaintiffs sued defendants on an alleged oral contract for the sale of the Kohlers' land to plaintiffs. The complaint proceeded to a bench trial before Judge

Douglas R. Engel. At the close of plaintiffs' case-in-chief, defendants moved under section 2--1110 of the Code of Civil Procedure (735 ILCS 5/2--1110 (West 2000)) for a finding in their favor. In ruling on the motion, Judge Engel did not weigh the evidence or assess the credibility of the witnesses but found, as a matter of law, that plaintiffs failed to present a prima facie case for the existence of an oral contract for the sale of land.

Plaintiffs appealed, and we reversed the trial court's decision. We held that plaintiffs had presented a prima facie case. Anderson, Slip op. at 9. We remanded for "further proceedings" without specifying how the trial court should conduct a new trial on remand. Anderson, Slip op. at 11. While the appeal was pending, Judge Engel retired. Judge Richard J. Larson was assigned the case, which proceeded again to a bench trial. Over plaintiffs' objection, Judge Larson barred them from presenting their case-in-chief again and instead relied on the transcript of their case-in-chief before Judge Engel. Plaintiffs were, however, allowed to present rebuttal following defendants' case. At the close of the evidence, Judge Larson found the witnesses for the parties "diametrically opposed, particularly as it related to the alleged oral contract to sell real estate." Judge Larson noted that "plaintiff Richard Anderson testified there was an oral contract to sell land" while "defendant Donald Kohler testified there was no oral contract to sell." Judge Larson found Richard Anderson and Donald Kohler "equally creditable" and David Anderson, Richard's son who also testified, "credible." Impliedly finding Donald Kohler more credible than Richard and David Anderson, the trial court entered judgment for defendants. Plaintiffs filed this timely appeal.

Plaintiffs attack both the procedure of the trial and the substance of its outcome. As to the procedural aspect, plaintiffs argue that the trial court committed reversible error when, over their objection, Judge Larson relied on the transcript of their case-in-chief from the prior trial in lieu of live testimony. Plaintiffs argue that, though credibility was a "central focus" of their case at trial, Judge

Larson heard "only a portion" of their witnesses' testimony and did not have a "full opportunity" to observe the demeanor of those witnesses.

Plaintiffs cite In re Marriage of Sorenson, 127 Ill. App. 3d 967 (1984), from the Fifth District Appellate Court. In Sorenson, the petitioner filed petitions for dissolution of marriage and for temporary custody of the parties' daughter, Sarah. After a hearing on the petition for temporary custody, Judge Lola Maddox granted temporary custody of Sarah to the respondent. Judge Maddox then held a hearing on the dissolution petition, taking testimony on issues of permanent child custody and distribution of marital assets. Before Judge Maddox issued any findings on those issues, she recused herself from the case. The case was reassigned to Judge Wendell Durr, who proposed to the parties that he decide the issues of permanent child custody and distribution of marital assets based on the transcripts of the hearings before Judge Maddox. The parties agreed to the procedure, but only the respondent was represented by counsel. On the basis of the transcripts, Judge Durr granted the respondent permanent custody of Sarah. The petitioner appealed, arguing that the trial court "was without authority to enter judgment based solely on the record of the prior hearings." Sorenson, 127 Ill. App. 3d at 968.

The appellate court noted that, though prior cases "held that a successor judge may properly issue an order based upon a predecessor judge's findings of fact," the present case involved "a situation where a successor judge issued an order based on original findings of fact discerned from the record of prior proceedings." (Emphasis added.) Sorenson, 127 Ill. App. 3d at 969. The court found no Illinois case "delineat[ing] the power of a successor judge to make his or her own findings of fact based solely upon transcribed testimony and exhibits" or "defin[ing] the power of litigants to stipulate to such a procedure." Sorenson, 127 Ill. App. 3d at 969. The court then summed up the trend in other jurisdictions:

"While the courts of other jurisdictions are divided on the issue of whether a successor judge may make findings of fact based upon a transcript of proceedings over which another judge presided, it is generally held that such a procedure is improper in the absence of a stipulation by the parties. (See generally Annot., 22 A.L.R. 3d 922 (1968).) The rationale of this holding is the longstanding principle that a litigant is entitled to a resolution of factual questions by a trier of fact who has been afforded an opportunity to assess the credibility of the witnesses by observing their demeanor. The seriousness with which this principle is regarded is evidenced by the fact that even when parties stipulate to a resolution of factual questions by a successor judge who reviews a record of prior proceedings, a new trial may nevertheless be warranted where critical determinations necessarily hinge upon the credibility of one witness or a set of witnesses over another. (Moore Golf, Inc. v. Lakeover Golf & Country Club, Inc. (1975), 49 App. Div. 2d 583, 370 N.Y.S. 2d 156.)" Sorenson, 127 Ill. App. 3d at 969.

Applying these principles, the appellate court vacated and remanded. The court held that the stipulation of the parties was insufficient to warrant Judge Durr in deciding the issue of custody based on transcripts of the proceedings before Judge Maddox. The court remarked that the testimony before Judge Maddox was "contradictory on matters crucial to a determination of the comparative parental fitness" and, therefore, Judge Durr "could have reached his decision only by weighing the testimony as it appeared in the transcript and necessarily attributing greater credibility to the testimony of the respondent and the witnesses called on respondent's behalf." Sorenson, 127 Ill. App. 3d at 970. Observing that the "overriding concern" in a child custody case is the best interests of the child, the court concluded:

"[W]e do not believe the interests of [Sarah] were best served by credibility thus attributed on the basis of data which was inherently incomplete. If, by reason of their stipulation, [the parties] were not entitled to a determination of their comparative parental fitness by a trier of fact who was afforded the opportunity to discern truthfulness by observing the demeanor of contradictory witnesses, [Sarah], whose life is singularly affected by such a determination, was so entitled. On this basis, we find the stipulation, insofar as it relates to a finding of parental fitness, inconsistent with the declared policy of [this] State." Sorenson, 127 Ill. App. 3d at 970.

Defendants propose that, because the case at bar is not "a criminal case or a support case," Sorenson is inapplicable. In our view, the principles of Sorenson are not so limited. The only tenable reading of Sorenson is that the court embraced the majority rule of other jurisdictions: absent the agreement of the parties, a successor judge may not make credibility determinations based on a transcript of proceedings over which another judge presided.[1] See Annotation, K. Kemper, Power of Successor or Substitute Judge, in Civil Case, to Render Decision or Enter Judgment on Testimony Heard by Predecessor, 84 A.L.R. 5th 399, 418 (2000) (collecting cases and concluding that "[a]s a general rule, due process considerations require that a party in a case tried without a jury is entitled to a decision by the judge who heard the evidence"). Any view that this rule is limited in Illinois to cases involving delicate issues like those in Sorenson, or may have diminished application based on

---

[1]This is, according to Sorenson, what the law requires at a bare minimum. Under Sorenson, even the stipulated use of transcripts in lieu of the de novo presentation of evidence may be improper where witness credibility is central to the case or where other important interests exist, such as those of the child in a custody proceeding.

the substance of the underlying controversy, is extinguished by the Illinois authorities that Sorenson, oddly, overlooked. The only case Sorenson cited was Brady v. Brady, 26 Ill. App. 3d 131 (1975), another marriage dissolution case where custody issues were paramount. Brady, however, cited Trzebiatowski v. Jerome, 24 Ill. 2d 24 (1962) (Trzebiatowski II), which followed Trzebiatowski v. Jerome, 19 Ill. 2d 30 (1960) (Trzebiatowski I).

Trzebiatowski I and Trzebiatowski II involved a suit in equity by the plaintiff to invalidate, as procured by fraud, a trust agreement between her and the defendant. After a bench trial, the trial court entered judgment for the plaintiff. On direct appeal to the supreme court, the defendant argued that the trial court based its decision "upon a theory not advanced in the pleadings and to which he had no opportunity to defend." Trzebiatowski I, 19 Ill. 2d at 35. The defendant explained that, though the plaintiff's complaint "sound[ed] in actual fraud and [was] based upon a fraudulent wilful misrepresentation," the trial court's decision was "replete with references to and findings of constructive fraud, overreaching, unconscionable fee, enrichment, and either no services or no useful services." Trzebiatowski I, 19 Ill. 2d at 35. The supreme court agreed that "the theory upon which the [trial court's] decree [was] based took form subsequent to the presentation of evidence." Trzebiatowski I, 19 Ill. 2d at 36. The court reversed and remanded, directing that the proofs be reopened to allow the defendant to present additional evidence relevant to the plaintiff's theory as it evolved at trial.

On remand, the chancellor who had heard the evidence in the original proceedings granted a change of venue, and the case was tried before "a new judge who, over proper and strenuous objection by defendant, permitted plaintiff to introduce into evidence the transcript of the proceedings at the original hearing even though there was no showing plaintiff's witnesses were not available on

the second trial." Trzebiatowski II, 24 Ill. 2d at 25. After the defendant presented his case, the trial court found for the plaintiff. The defendant appealed, and the supreme court reversed in a brief opinion, holding that "[u]nder the circumstances reflected in the record it was error for the second chancellor to admit the transcript of the first proceeding into evidence and to consider it as a basis of decision." Trzebiatowski II, 24 Ill. 2d at 25. For the court, the issue was of constitutional dimension:

"The full hearing contemplated by due process of law contemplates that all of the evidence should be submitted before a single judge or master who may see the witnesses and weigh their testimony and determine their credibility." Trzebiatowski II, 24 Ill. 2d at 25-26.

The court declared that "[i]t was the clear duty of the chancellor here to conduct a trial de novo." Trzebiatowski II, 24 Ill. 2d at 26. The court remanded "with directions to have a trial de novo." Trzebiatowski II, 24 Ill. 2d at 26.

As authority for the principle of due process it articulated, Trzebiatowski II cited two Illinois cases, People ex rel. Reiter v. Lupe, 405 Ill. 66 (1950), and Mills v. Ehler, 407 Ill. 602 (1951). In Reiter, the plaintiff brought an action for an accounting against an insurance company and other defendants. The trial court referred the case to a master in chancery (the first master) to take testimony and submit proposed conclusions of law and fact. At the conclusion of the plaintiff's case before the first master, the defendants moved for a finding in their favor. On the recommendation of the first master, the trial court granted the motion. The supreme court reversed the decision and remanded for a new hearing. Reiter v. Illinois National Casualty Co., 397 Ill. 141 (1947). On remand, the case was referred to a different master (the second master). The plaintiff, seeking to avoid the expense of presenting his case anew, moved the second master simply to consider the transcript of the plaintiff's case before the first master. The defendants objected, urging the second

master to conduct a trial de novo. The motion was referred to the trial judge, who denied it and directed the second master to conduct a hearing de novo. The plaintiff petitioned the supreme court for a writ of mandamus directing the trial court to expunge its order for a hearing de novo. The supreme court denied the petition, reasoning:

"[The second master] has not seen or heard the witnesses produced by plaintiff at the former hearing. Since a consideration of the proper weight or sufficiency of plaintiff's evidence is a necessary subject to be considered by him in interpreting the evidence offered by defendants, it will be seen that the defendants would be deprived of their fundamental right to a decision by a master who saw the witnesses on the stand and heard all their testimony. One of the duties of a master is to decide upon the credibility of the witnesses, a duty which he cannot fully perform if he does not see the witnesses. The full hearing required by due process of law contemplates that all of the evidence should be submitted before a single judge, master or other tribunal which could see the witnesses, weigh their testimony and determine their credibility. In the absence of findings and report from the master, in order to afford the parties a hearing within the recognized meaning of that word, it is the duty of the court to direct a trial de novo before another master or before itself. [Citation.]

* * *

*** No one could contend in a law case that a plaintiff who had obtained a decision in an Appellate Court, reversing the ruling of a trial court which had taken his case away from the court or jury, would have the right to present his evidence from the first trial in transcript form at a new trial." Reiter, 405 Ill. at 71-73.

In Mills, the plaintiff sued to have a quitclaim deed declared void. The evidence was heard by a master in chancery (the first master), who submitted proposed conclusions of law and fact to the

trial judge. Later, the plaintiff's complaint was dismissed for failure to name a necessary party. The plaintiff filed an amended complaint, and, over the plaintiff's objection, the case was referred to a different master (the second master). The second master conducted a hearing <u>de novo</u>. On the second master's recommendation, the trial judge dismissed the amended complaint "for want of equity." <u>Mills</u>, 407 Ill. at 607. The plaintiff appealed. When the case reached the supreme court, the defendants filed a motion to strike from the record all matters relating to the proceedings before the first master. The plaintiff opposed the motion, suggesting that the trial judge's decision showed that his conclusions were based in part on the report from the first master. The court rejected the plaintiff's interpretation of the trial judge's decision. The court, citing <u>Reiter</u>, noted alternatively that, "under the previous decisions of this court, it would have been erroneous either for [the second master], on a reference to take evidence and report his conclusions, or the judge who made the reference, to have considered the matters presented to [the first master] on the previous reference." <u>Mills</u>, 407 Ill. at 611. The court observed that the plaintiff seemed "aware of this rule" "by her action of causing all witnesses who testified before [the first master], to appear again before [the second master]." <u>Mills</u>, 407 Ill. at 612.

Several points may be drawn from the holdings in <u>Sorenson</u>, <u>Trzebiatowski II</u>, <u>Reiter</u>, and <u>Mills</u>. First, the latter three cases confirm that the due process mandate--that findings of fact based on the demeanor of witnesses be made by a judge who observed the witnesses--is not limited to marriage dissolution cases. Though they all dealt with equitable claims in chancery courts, nothing in the cases suggests that the elementary principle of due process they espouse does not have full sway in proceedings at law, as <u>Sorenson</u> would later illustrate. Indeed, <u>Reiter</u> reached its holding in part by drawing comparisons to proceedings at law, noting that "[n]o one could contend in a law case that a plaintiff who had obtained a decision in an Appellate Court, reversing the ruling of a trial court

which had taken his case away from the court or jury, would have the right to present his evidence from the first trial in transcript form at a new trial." Reiter, 405 Ill. at 72-73.

Second, the requirement of due process is not met if all the witnesses who testified before the predecessor judge also give some testimony before the successor judge. The supreme court's comment in Reiter that the second master saw none of the witnesses who testified before the first master (see Reiter, 405 Ill. at 72) must not be taken to imply that the mere appearance of those witnesses before the second master would have been sufficient. That notion is foreclosed by the court's description of what due process requires. According to the court, due process mandates that "all of the evidence should be submitted before a single judge, master or other tribunal which could see the witnesses, weigh their testimony and determine their credibility." (Emphasis added.) Reiter, 405 Ill. at 71. Litigants are entitled to "a decision by a master who saw the witnesses *** and heard all their testimony." (Emphasis added.) Reiter, 405 Ill. at 71. A trial de novo is required where the predecessor judge left no "findings and report." Reiter, 405 Ill. at 71. Notably, the supreme court in Trzebiatowski II did not consider it necessary to observe whether all the witnesses who testified at the first hearing also testified at the second hearing. The court found reason enough for reversal in the simple fact that the judge who made credibility determinations did not see all of the testimony of the witnesses he judged. The requirement that a judge see the entire testimony of the witness whose credibility he assesses is in keeping with the distinct roles of trial and appellate courts. If courts of review are ill-equipped to assess a witness's credibility, they are no better positioned to decide what level of exposure to a particular witness is necessary for a trial court to form a substantiated view of his credibility. Courts of review are spared the need to make this type of judgment by the rigid rule of Trzebiatowski II, Reiter, and Mills.

Third, as the supreme court authorities imply, and as <u>Sorenson</u> makes explicit, a successor judge may render a decision based on a predecessor judge's findings of fact. See <u>Reiter</u>, 405 Ill. at 71-72 ("<u>In the absence of findings and report from the master</u>, in order to afford the parties a hearing within the recognized meaning of that word, it is the duty of the court to direct a trial <u>de novo</u> before another master or before itself" (emphasis added)); <u>Sorenson</u>, 127 Ill. App. 3d at 969 ("a successor judge may properly issue an order based upon a predecessor judge's findings of fact"). We need not explore the details of this caveat to render our decision, for here Judge Engel made no credibility determinations in the prior proceeding.

Fourth, any litigant in the proceeding may assert the due process right. In addition, a litigant has standing to object where <u>any</u> of the testimony was not presented before the judge who made the credibility findings. This includes testimony from the litigant's own witnesses as well as testimony from another litigant's witnesses. In the case at bar, plaintiffs complain that they were unable to present their own case-in-chief again. In <u>Trzebiatowski II</u> and <u>Reiter</u>, however, it was the plaintiffs' decisions to stand on the transcripts of their cases-in-chief that triggered the defendants' objections.

Fifth, the due process mandate is not absolute. A successor judge may rely on transcripts of a prior trial in lieu of proceeding <u>de novo</u> where the witnesses who testified at the prior trial are "not available on the second trial" (<u>Trzebiatowski II</u>, 24 Ill. 2d at 25) or where the parties agree to stand on transcripts of the prior proceeding (<u>Sorenson</u>, 127 Ill. App. 3d at 969). <u>Sorenson</u>, we note, further suggests that the agreement of the parties may be insufficient "where critical determinations necessarily hinge upon the credibility of one witness or set of witnesses over another," or where other important interests exist. <u>Sorenson</u>, 127 Ill. App. 3d at 969. We express no opinion on these caveats from <u>Sorenson</u>, for here the minimum requirement of an agreement between the parties was not met

and there is no suggestion that any witness who testified at the first trial was unavailable for the second trial.

Defendants contend that Judge Larson's decision to proceed as he did over plaintiffs' objection finds vindication in In re Marriage of Fotsch, 139 Ill. App. 3d 83 (1985). In Fotsch, the predecessor judge took testimony on the petitioner's petition for a change of custody of the parties' children. When the predecessor judge recused herself before the evidence was concluded, the petitioner moved the successor judge to make a decision based on the transcript of the proceeding before the predecessor judge and on additional testimony presented by the parties. The respondent agreed to the procedure. The trial court denied the petitioner's motion, on the basis of Sorenson, but certified the question for review. The First District Appellate Court vacated the trial court's order. The court criticized Sorenson, but on inconsistent grounds. The court discounted Sorenson as "inconsistent with the well-established law of this State and many others," which is that "transcripts of prior testimony may be used by a successor judge if such procedure is consented to by all parties." Fotsch, 139 Ill. App. 3d at 87. Yet the Fotsch court agreed with Sorenson's refusal to rely on the transcripts of the prior proceeding despite the parties' agreement to the procedure. The Fotsch court considered the refusal warranted because neither the respondent nor the parties' child in Sorenson was represented by counsel. In contrast to Sorenson, all the parties in Fotsch were represented by counsel.

The Fotsch court proceeded to distinguish Sorenson on one further ground:

"Finally, in Sorenson, the successor judge entered the judgment based solely on the transcripts of the prior hearing and never heard testimony from a single witness--not even the parties. In the case before us, the successor judge will have an opportunity to hear testimony

from the parents, their experts and various other witnesses, and will have an opportunity to interview the children in camera." Fotsch, 139 Ill. App. 3d at 87.

The Fotsch court offers this rationale as seemingly independent of its earlier observation that the parties voluntarily agreed to the use of transcripts from the prior proceeding. If the suggestion is that due process is always satisfied if all witnesses from the prior proceeding appear before the successor judge, even if not all of the evidence in the case is presented anew to that judge, then Fotsch is out of step with supreme court authority. In Trzebiatowski II, the supreme court held that "all of the evidence should be submitted before a single judge or master who may see the witnesses, weigh their testimony and determine their credibility." (Emphasis added.) Trzebiatowski II, 24 Ill. 2d at 26.

In the present case, Judge Engel made no credibility determinations in the prior proceeding, and plaintiffs did not agree that the transcripts from that proceeding should stand as their case-in-chief before Judge Larson. Judge Larson, therefore, was required to conduct a trial de novo, which he refused to do.

The due process concerns in this case are particularly acute. Plaintiffs' claim of an oral agreement is based on a conversation between Richard Anderson, his son David, and Donald Kohler that took place in the spring of 1994 on Richard's property. Richard, David, and Donald all testified to this conversation but, as Judge Larson observed, Donald's version of the conversation "diametrically opposed" Richard's and David's. In plaintiffs' case-in-chief (before Judge Engel) and in their rebuttal case (before Judge Larson), Richard testified that, during the spring 1994 conversation, Donald "agreed to sell" Richard a parcel of land. David testified, in plaintiffs' case-in-chief, that Donald said he was "more than willing" to sell the land. David did not testify to the conversation on rebuttal. In the defense case (before Judge Larson), Donald directly contradicted

Richard and David, testifying that he offered only a sublease of the land to Richard and said he "maybe" would agree to a sale later.

Judge Larson had occasion to observe Richard and David Anderson as they testified in plaintiffs' rebuttal case. This exposure was limited in a material respect, however. While both Richard and David had testified about the crucial spring 1994 conversation in plaintiffs' case-in-chief before Judge Engel, only Richard testified to that conversation in the rebuttal case before Judge Larson. David's rebuttal testimony touched only on matters relevant to plaintiffs' case for damages. Judge Larson, therefore, had no opportunity to observe David as he testified to an event integral to plaintiffs' case. Whether Judge Larson nonetheless saw enough of David to have an adequate sense of his credibility is immaterial, for "[t]he full hearing contemplated by due process of law contemplates that all of the evidence should be submitted before a single judge or master who may see the witnesses, weigh their testimony and determine their credibility." (Emphasis added.) Trzebiatowski II, 24 Ill. 2d at 25-26.

Accordingly, we reverse the trial court's judgment for defendants on count I of plaintiffs' complaint, which sought specific performance of the alleged oral contract. We also reverse the trial court's dismissal of the remaining count, count III, which sought damages, because the dismissal was premised on the judgment on count I. If this case proceeds to a trial again on remand, the trial court must conduct a trial de novo because plaintiffs oppose the substitution of transcripts from the prior trial for live testimony.

For the foregoing reasons, we reverse the judgment of the circuit court of De Kalb County and remand this cause for further proceedings consistent with this opinion.

Reversed and remanded.

McLAREN and BYRNE, JJ., concur.